6611

## GERMAN-AMERICAN INSURANCE CO. v. SOUTHERN RY.

LIABILITY BY RAILROADS FOR DAMAGES BY COMMUNICATED FIRES.—Under an agreement, "this cotton is deposited on the premises of the Southern Railway Company and same remain upon the premises of the company without its consent at your sole risk until tendered and accepted for shipment," the carrier is not liable under sec. 2135, Code 1902, for the destruction of the cotton by fire communicated by its locomotive, and enforcing the agreement is not against public policy.

MR. JUSTICE GARY *dissents.*

Before PRINCE, J., Fairfield, Fall Term, 1906. Reversed.

Action by German-American Insurance Co., Royal Insurance Co. and Millett and Co. against Southern Ry. Co. From judgment for plaintiff, defendant appeals on following exceptions:

1. "That his Honor, the presiding Judge, erred in refusing the motion to direct a verdict in favor of the defendant, upon the ground that it appeared from the undisputed evidence in the case, that the property destroyed had been placed on the defendant's right of way by Millett & Company, the owners, with knowledge that the defendant did not consent to its being so placed before it should be tendered for shipment, and that it was never so tendered.

2. "That his Honor, the presiding Judge, erred in refusing to direct a verdict for the defendant, for the reason that there was no testimony tending to show that the property which was destroyed while upon the defendant's right of way had been placed on such right of way with its consent.

3. "That his Honor, the presiding Judge, erred in refusing to direct a verdict for the defendant for the reason that it appeared from the evidence that there was a misjoinder of parties plaintiff and of causes of action, the rights of the plaintiffs being several and not joint, the evidence could not sustain a verdict in favor of the defendants jointly.

4. "That his Honor, the presiding Judge, erred in refusing the defendant's motion for a new trial, for the reason that there was no testimony tending to show that the cotton destroyed had been placed upon the defendant's right of way with its consent.

5. "That his Honor, the presiding Judge, erred in refusing the defendant's motion for a new trial, on the ground that the verdict being for a single sum in favor of the defendants joinly, was not supported by the evidence, which showed the rights of the plaintiffs to be several and not joint.

6. "That his Honor, the presiding Judge, erred in charging the jury, with reference to the cotton on the right of way: 'Now, if you find it was there with the knowledge of the defendant company, then the inference, in the absence of other testimony, the inference might be drawn that it was there with the consent of the company; and that inference arises only in those cases where the property of one is placed upon the lands of another, who has a right to object to its being there. But I charge you that a railway company has a right to object to the storing of cotton on its right of way that is not placed there for the purpose of shipment on the railroad.' In that he thereby instructed the jury, in effect, that an inference of consent on the part of the company to the placing of property on its right of way arose from the fact, if shown by the evidence, that the property was placed upon such right of way with its knowledge, in the absence of any other testimony, and was a charge on the facts, in violation of section 26, article V, of the Constitution of this State; and said charge was in violation of the provisions of section 2135, volume I, Code of Laws of South Carolina, 1902, which required the plaintiff to affirmatively prove consent on the part of the railway company to the placing of the property on its right of way.

7. "That his Honor, the presiding Judge, having charged the jury that 'the Statute exempts the railroad company from liability for the destruction by fire of property placed upon its right of way without its consent, and recognizes

the right of the company to withhold its consent when any property is placed thereon, and such consent must be affirmatively shown;' erred in also charging the jury, that the inference that the company consented to the property being placed on its right of way arose, if the jury should find that it was placed there with the knowledge of the company, it having a right to object, in the absence of any other testimony. The charge being contradictory, and making proof of knowledge equivalent under the statute, to proof of consent.

8. "That his Honor, the presiding Judge, erred in construing the written notice, Exhibit F, introduced in evidence, and in charging the jury in reference thereto, as follows: 'By this notice, the railway says it doesn't consent. It is for you to say whether it did or not. It says the cotton is there at the risk of the owner. I charge you that if the railroad consented for that cotton to be there, the railroad couldn't limit its liability under that statute. The question is, did the railroad company consent for it to be there? If it consent for it to be there, it can't say, I consented for it to be there, but it must be at your risk. I charge you that under that statute the railroad company can't do that; and if the railroad company consented for it to be there, why then it was at the risk of the railroad if it burned it. Now, that is my interpretation of the law in connection with this notice that has been placed in evidence.' Whereas, it is submitted, that the railroad company was under no obligation to permit property to be placed or to remain on its right of way, until it should be tendered for shipment; and could, in the exercise of its rights, attach to its permission that property be placed or remain on its right of way before being tendered for shipment, a valid condition that should be there without its consent, and at the risk of its owner until tendered for shipment."

*Messrs. B. L. Abney* and *W. H. Townsend,* for appellant, cite: *Charge that an inference of consent arose from mere*

*knowledge was contradictory to the charge that consent must be proved:* 31 S. C., 461; 72 S. C., 97; 43 S. C., 613; 51 S. E., 183. *Contracts allowing property to be placed on right of way with a stipulation exempting from liability for damages by fire are valid:* 175 U. S., 91; 95 Tex., 461; 115 Tenn., 402; 109 Cal., 86; 135 Mich., 210.

*Mr. J. E. McDonald,* contra, cites: *All parties having an interest in the subject matter of the suit should be joined as parties plaintiff:* 76 S. C., 101; 41 S. C., 408. *Carrier has an insurable interest in the cotton:* 55 S. C., 504; 24 S. C., 366; 13 Ency., 419.

August 3, 1907.   The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff insurance company seeks to be subrogated to the rights of Millett & Co. to recover under section 2135 of the Code. This statute makes every railroad corporation responsible in damages to the owner whose property may be injured by fire, communicated by its locomotive engines or originating within the limits of the right of way, in consequence of the act of its authorized agents or employees, except in any case where the property shall have been placed on the right of way of such corporation, unlawfully or without its consent. It was shown that the cotton of Millett & Co. was destroyed by fire, while on defendant's right of way, but not tendered for shipment, by a spark communicated from defendant's locomotive engine; but the vital question is, whether the cotton was on defendant's right of way *by its consent,* as contemplated by the statute.

The undisputed testimony was that Millett & Co. placed the cotton on defendant's right of way under an agreement, stipulating: "This cotton is deposited on the premises of the Southern Railway Company and the same remain upon the premises of this company without its consent and at your

(Millett & Co.) sole risk, until tendered and accepted for shipment."

Now, it is contended that notwithstanding this express stipulation, the cotton was on defendant's right of way by its consent, before it was tendered for shipment. We cannot think so. Millett & Co. and those in privity with them, should be estopped to assert a fact which is contrary to their agreement, that until tendered for shipment the cotton remains upon the right of way without defendant's consent.

It is said that such an agreement is void on the ground of public policy. As it subserves a very high public policy to enforce contracts between parties *sui juris,* Courts should not nullify contracts as against public policy unless the case is free from all reasonable doubt. The rule is that, "a contract is not void as against public policy, unless it is injurious to the interest of the public or contravenes some established interest of society." What interest of the public is injuriously affected by the agreement in question? Millett & Co. had no right as a member of the public to place cotton on defendant's premises, unless tendered for shipment, except by agreement with defendant, and defendant owed no duty to the public or to Millett & Co., to allow cotton to be placed on its right of way, except for shipment.

A different question would be present if Millett & Co. had the right as a member of the public to place cotton on defendant's right of way, independent of an agreement. The *status* of the cotton on the right of way being fixed by the agreement alone, must be determined by the agreement alone. If it be true that the cotton was on defendant's premises by its consent on condition, the owner cannot cling to the consent and repudiate the condition upon which it was given, for that would be like a consent obtained by fraud or deception which is no consent.

The authorities generally hold, that a contract by a railroad corporation is not against public policy, because it exempts from liability for fires, even negligently communicated by its agents or defective instrumentalities to property

placed by the owner upon railroad premises, not as a patron dealing with the company as a common carrier, but by virtue of the special agreement. *Griswold* v. *Illinois Central R. R. Co.,* 90 Iowa, 265, 24 L. R. A., 647; *Hartford F. Ins. Co.* v. *Chicago M. & St. P. R. Co.* (C. C. A.), 30 L. R. A., 193, 20 Sup. Ct. Rep., 33, following the rule established by the State Court in the Griswold case. *Stephens* v. *Southern Pacific Co.* (Cal.), 29 L. R. A., 751, 50 Am. St. Rep., 17; *Greenwich Ins. Co.* v. *Louisville Nashville R. R. Co.* (Ky.), 56 L. R. A., 477; *Osgood* v. *Central Vermont R. Co.,* 77 Vt., 334, 70 L. R. A., 930; *Mann* v. *Pere Marquette R. Co.,* 135 Mich., 210, 97 N. W., 721. These cases combat the view that the public has an interest in the contract, because it tends to induce negligence in the equipment and operation of the locomotives.

The contract in this case is not to do an act prohibited by statute or which is contrary to the public policy as declared by a statute, but is the admission by both parties of a fact which takes the case out of the statute, viz: that the cotton was not upon the right of way with the consent of defendant until tendered for shipment.

Under the foregoing views it was error to refuse to direct a verdict for defendant and to refuse the motion for new trial.

The judgment of the Circuit Court is reversed.

MR. JUSTICE GARY, *dissenting.* This is an appeal from a judgment recovered by the plaintiff against the defendant, under section 2135 of the Code of Laws for loss of, or damage to 37 bales of cotton by fire from a locomotive of the defendant, which cotton, it is alleged, had been placed upon the platform and right of way of the defendant, at its depot in Winnsboro, S. C., on the 22d of September, 1904, by its consent.

The cotton had been purchased by Millett & Co., who took out two policies of insurance—one in German-American

Ins. Co. and the other in Royal Ins Co.—each of said policies being in the sum of $1,000.00.

The loss under the policies, if any, was made payable to the Winnsboro Bank, as its interest might appear by virtue of an agreement between the insurance companies and Millett & Co.

The insurance companies and Millett & Co. joined as plaintiffs in the action, although it was alleged in the complaint, that the insurance companies had paid the loss which had been adjusted between them to Millett & Co. and the Winnsboro Bank.

It was, however, alleged that Millett & Co. were made parties plaintiffs, as a matter of form, by reason of their former interest, to which the insurance companies were subrogated.

The defendant demurred to the complaint, and also filed an answer. The grounds of demurrer were:

(1) "That it appeared upon the face of the complaint, that no cause of action was stated in favor of the plaintiffs, Millett & Co.

(2) "That it appeared on the face of the complaint, that there was a misjoinder of causes of action, in that the plaintiffs, insurance companies, each had a separate claim against the defendant, and not a joint cause of action."

The demurrer was overruled.

At the close of the testimony, the defendant's attorneys requested his Honor, the presiding Judge, to direct the jury to find a verdict in favor of the defendant, upon grounds hereinafter mentioned, which was refused.

The defendant did not introduce any testimony.

The jury rendered a verdict in favor of the plaintiffs for $1,560.84.

The defendant's attorneys also made a motion for a new trial upon the same grounds as those upon which they requested the presiding Judge to direct a verdict.

The appellant's exceptions will be set out in the report of the case.

The first question that will be considered is whether there was any testimony tending to sustain the allegation of the complaint, that the cotton was placed upon the defendant's platform with its consent.

We reproduce the testimony touching this question.   E. Millett, a witness for the plaintiffs, testified as follows: "Q. What is that platform used for, Mr. Millett?   A. At that time, it was to store cotton on, principally.   Q. Store cotton on principally?   A. Yes, sir.   Q. For what purpose?   A. Until they got a bill of lading for it, or put it in a warehouse. Q. Was cotton generally put there for shipment?   A. Yes, sir, but not absolutely.   Q. Mr. Millett you had just bought this cotton from wagons, as they came to town?   A. Yes, sir.   Q. And it was taken down there and weighed, and just left on the platform?   A. It was.   Q. You have not tendered it for shipment at all?   A. No, sir.   Q. Now, as to this notice, can you state whether or not for every bale of cotton you put there you got a notice?   About when were these notices sent, once a week, or once a month, or how? A. Well, almost all the time, almost every time I sent one bale or more there, more or less.   Q. Sir?   A. Once in a while he wouldn't stamp them.   He would overlook stamping them, but as a general thing it was on all the notices. Q. You accepted that notice as the terms upon which the cotton was accepted by the railroad company, did you not?   A. I paid no attention to it at all.   Q. Did you understand that it was not there with their consent?   Mr. McDonald: We object to that.   A. No, I didn't.   Mr. McDonald: Well, I will let that come out.   I will withdraw my objection."

T. J. Cureton, a member of the firm of Millett & Co., testified as follows: "Q. About this time how was cotton put on that platform for what purposes?   A. Well, it was put therefore for shipment, and also the convenience of the parties.   Q. Who weighed the cotton?   Q. Who was the weigher there?   A. Mr. Creight.   Q. Well, Captain, will you state whether or not during the cotton season, I mean about this time, along in September, 1904, all the cotton that

was bought here, that was not stored in a warehouse was put there on that platform? A. I think it was, when they could get it on it. Sometime they couldn't get it on. Q. Why couldn't they get it on? A. Sometimes there would be more on the platform than it would hold, and they would have to put it on the ground contiguous. Q. Do you know who controls that platform there? A. I suppose the railroad, the railroad agent. Q. The railroad agent? A. Yes, sir. Q. How near does that platform come up to the depot? A. Comes right up. Q. It is joined to the depot? A. Yes, sir, joined to the depot, and surrounds it. That is, the depot cuts it off rather. Q. Well, there is a platform on all sides, one next to the track, and one the side next to your house? A. Yes, sir. Q. Captain, what did you say about this at the last trial? A. I don't remember. Q. Didn't you say they were there at your risk? A. I considered it there at the risk of my insurance. I wouldn't have taken a policy otherwise. Q. You accepted this as showing that the railroad company didn't consent to that cotton being there, did you not? A. Yes, sir, not on those terms—at their risk. Q. And this cotton was never tendered for shipment? A. Not that I recollect of. Most of it had been bought that day. Q. Captain, were these notices sent every day or every week, or every month, or how? A. It was generally on every lot of cotton bought. Q. Captain, what did you do with these notices? A. I filed them on my file. Q. Did you pay any attention to them? A. I didn't pay any attention to them. Of course, I knew that that was the terms."

W. H. Flenniken, another witness in behalf of the plaintiffs, testified as follows: "Q. Mr. Flenniken, when cotton is bought here from wagons, what is done with it? A. It is hauled to the depot down there, weighed up by the public weigher, and the tickets are sent here for settlement. Q. Who is the public weigher there? A. Mr. Creight, W. D. Creight. Q. Where is the cotton left after it is weighed? A. On the platform, sir. Q. For what purpose? A. For shipping; that is as far as I know, of course."

The following instrument of writing was introduced in evidence, under the admission that while it is not the notice given to Millett, it is similar:

"No........        Winnsboro, S. C., ......190..

Bought by ............................. from

...........................(..........) Bales

Cotton as listed.      WEIGHT. This cotton is deposited on premises of the Southern Railway Company, and the same remain upon the premises of this Company without its consent and at your sole risk until tendered and accepted for shipment.

W. B. Creight, Agt.

.......... .......... ..........

Weigher."

This testimony shows that the platform was used by the public generally, as a place for storing cotton, preparatory to shipment, by consent of the defendant; that as the railroad company had control of the platform, the cotton was in its possesion as soon as it was deposited thereon; that while the mutual benefits contemplated by the public and the railroad company, may not have created the relation of temporary warehouseman on the part of the defendant, nevertheless, it became a gratuitous bailee; that the conduct of the defendant was not only calculated to affect the rights of Millett & Co., but likewise of the public generally, who in effect, were invited to place cotton on the platform.

Our construction of the writing containing the notice is that the defendant consented for the cotton to be deposited on its platform, but attached a condition to its consent.

The testimony shows that the exceptions raising this question cannot be sustained.

The next question for consideration is whether the condition is valid.  Section 2135 of the Code of Laws is as follows:

"Every railroad corporation shall be responsible in damages to any person or corporation whose buildings or property may be injured by fire communicated by its locomotive engine, or originating within the limits of the right of way of said road in consequence of the act of any of its authorized agents or employees, except in any case where the property shall have been placed on the right of way of such corporation unlawfully, or without its consent, and shall have an insurable interest in the property upon its route for which it may be held responsible, and may procure insurance thereon in its own behalf."

This statute was construed in the case of *McCandless* v. *R. R.*, 38 S. C., 103, and declared to be constitutional, and in every State adopting a similar statute, it has been construed with the same result.

The Supreme Court of the United States has sustained the constitutionality of these statutes, and in the case of *St. Louis & S. F. Ry. Co.* v. *Matthews*, 165 U. S., 1, ably and elaborately discusses the reason for this conclusion. which is. that they are a legitimate exercise of the police power.

See, also, *Atchison T. & S. F. R. R. Co.* v. *Matthews*, 174 U. S., 96, and *McConnell* v. *Kitchens*, 20 S. C., 430.

Statutes prohibiting certain acts on the ground that they are against public policy, stand upon a different footing from others, in as much as contracts entered into between parties, contrary to the provisions of such statutes, are null and void. *McConnell* v. *Kitchens*, 20 S. C., 430; *Thomas* v. *R. R. Co.*, 101 U. S., 71.

As this statute has been declared valid as a police measure, it necessarily follows that the public has an interest in its provisions, which cannot be abrogated by private agreement. It is this reason that prevents us from following the principle announced in the cases cited by the appellant's attorneys.

In determining the question under consideration, we are not controlled by the decisions of the Supreme Court of the United States, as that Court decided in the case of *Hartford*

*Ins. Co.* v. *R. R. Co.*, 175 U. S., 91, that such questions arise under statutory local laws and the decisions of the State Courts will be followed, by the Courts of the United States, in the construction of these statutes.

These views practically dispose of all questions presented, except those mentioned in the 3d and 5th exceptions, which have not been argued by the appellant's attorneys, and we deem it only necessary to state that upon examination it has been found, they cannot be sustained.

To recapitulate, it thus appears: (1) that the testimony shows the cotton was placed on the platform by consent of the railroad company; (2) that the statute was enacted as a police regulation; and, (3) that the contention of the appellant, that a valid condition was attached to the notice cannot be sustained, for the reason that the condition limited the operation of the statute as a police regulation and was against public policy.

For these reasons I dissent.