**UNITED STATES of America ex rel. Charles MUSIL, Petitioner-Appellee,**

v.

**Frank J. PATE, Warden, Respondent-Appellant.**

**No. 17644.**

United States Court of Appeals, Seventh Circuit.

June 10, 1970.

---

Thomas I. Immel, Asst. Atty. Gen., William J. Scott, Atty. Gen. of Illinois, Chicago, Ill., for respondent-appellant; Joel M. Flaum, Asst. Atty. Gen., of counsel.

Kalvin M. Grove, Chicago, Ill., for petitioner-appellee.

Before KILEY, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Charles Musil is imprisoned under sentence imposed in 1960 by an Illinois court upon conviction of murder. He challenges the use at his trial of his testimony given at a coroner's inquest, where he was not represented by counsel. The district court found that the inquest was a critical stage of the criminal proceeding at which Musil was entitled to assistance of counsel.[1] The court held that the conviction must be vacated, but did not order release because of sentences upon other convictions not in issue. The warden has appealed.

Musil was arrested November 14, 1959 on suspicion of a murder which occurred November 13. The inquest was held November 16, the grand jury voted an indictment some time later. Musil was brought to the inquest in custody and called as a witness. Before he was sworn the deputy coroner addressed him as follows:

"It now becomes my duty as Deputy Coroner of this County in [sic] inform you of your constitutional rights and that is that you do not have to testify here today unless you do so of your own free will and accord without any promise of immunity or reward, knowing full well that anything that you say now may be used against you at this hearing or at some future hearing.

"Knowing this and on advice of any family or friends that you may have here, do you wish to testify? Answer yes or no.

"A. Yes."

After Musil was sworn, the coroner said:

"You understand, this deputy of mine gave you your constitutional rights, and we live by laws in this country.

1. United States ex rel. Musil v. Pate (N.D. Ill., 1969), 296 F.Supp. 1139.

"So that as long as you are going to want to tell the truth, you just go ahead and tell the story, just exactly what happened.

"Tell it to me and the jury, and take your time, and talk loudly enough so that the jury can hear you. Go ahead."

Answering this and further questions, Musil described his attempt to rob the deceased, and shooting him during the course of it.

At the trial, Musil took the stand and denied involvement in the robbery and death. He asserted that certain oral and transcribed incriminating statements to the police and state's attorney, introduced in evidence in chief by the state, either had not actually been made by him as represented, or, to the extent he had made or signed them, had been the product of coercion, fear, and promise of leniency. Portions of his testimony at the inquest, which was consistent with his earlier statements, were introduced for the purpose of impeachment.

■ The warning given Musil at the inquest, and just quoted, would not completely fulfill *Miranda* requirements for in-custody interrogation. Nor does it clearly appear that the circumstances of the inquest, in combination with the warning, would qualify as "other procedures which are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it, * * * "[2] But the trial occurred before *Miranda* was decided. *Miranda* warnings were therefore not essential in order to establish that the self-incrimination was voluntary.[3]

Petitioner does not claim in this proceeding that his inquest testimony was involuntary under pre-*Miranda* rules. His claim that his statements to the police and state's attorney were coerced or improperly induced failed in the state courts.[4] He has not raised it in the present proceeding.

Petitioner does contend that the coroner's inquest was similar to pretrial episodes in other cases which have been held to be critical stages of a criminal proceeding so as to entitle the accused to assistance of counsel under the sixth amendment. If petitioner was so entitled, the inquest record shows no advice concerning the right to counsel nor offer of counsel without expense to petitioner.

Petitioner relies upon the general principle, stated in *Mempa v. Rhay*[5] that "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected."

We do not understand that petitioner urges the broad application of that principle to any inquest where a person under suspicion at the time of the inquest is later prosecuted for causing the death which is the subject of the inquest. Such a broad application would assume that counsel for a suspect would have functions to perform which might protect his client's interest. It would fuse traditional investigatory procedures with prosecution. It would logically require that if the suspect was not represented at the inquest and did not waive such representation, and the suspect later challenged his conviction, the proceeding would have to be unraveled back to the beginning of the inquest, in order to correct the error, or at least no evidence developed at the inquest could be used against him at trial.

Rather it is petitioner's claim that if a suspect testifies at an inquest in the absence of counsel, or effective waiver, the suspect's testimony is inadmissible against him at his trial. This suggests the proposition that the function of counsel for the suspect at an inquest is limited to advising the suspect, as a wit-

---

2. *Miranda v. Arizona* (1966), 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694.

3. *Johnson v. New Jersey* (1966), 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

4. *People v. Musil* (1967), 37 Ill.2d 373, 227 N.E.2d 751.

5. (1967), 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336.

ness, of his privilege to refuse to incriminate himself, and that proposition in turn suggests that the presence of counsel is only a safeguard (as in *Miranda*) of the fifth amendment right not to be compelled to give incriminating testimony.

The Supreme Judicial Court of Massachusetts recently summarized the nature of an inquest as follows: "This is, in effect, that inquests are investigatory in character and not accusatory. * * * They are not part of any criminal proceedings which may ensue. * * * Under statutes resembling our own, in order to initiate a criminal prosecution, there must be subsequent and independent criminal proceedings. * * * It may be that, to show an admission or confession at an inquest or to prove the prior inconsistent statement of a witness, some evidence at an inquest will be admissible at later criminal proceedings in accordance with usual principles of the law of evidence. The inquest decision itself is not admissible. * * * " [6]

Chapter 31 of the Illinois Revised Statutes,[7] dealing with coroners and the coroner's inquest, is declaratory of the common law.[8] There is nothing to suggest that the nature of the inquest in Illinois is substantially different from that described by the Massachusetts court.

The Supreme Court of Illinois had decided, in 1961, "that where an accused is unattended by counsel and does not become a witness of his own volition, a judicial confession made at a preliminary hearing may not be properly introduced into evidence at the subsequent trial, unless the proof affirmatively shows (1)

that the accused had independent knowledge or was advised by the court of his right to refuse to testify; (2) that he was advised or knew that any statements made could be used against him; and (3) that he knowingly and intelligently waived his constitutional privilege against self-incrimination." [9]

The warning given Musil by the coroner was held to have met those requirements.[10] And the Supreme Court of Illinois later held in the case of another pre-*Miranda* trial, that the warnings were sufficient and the inquest not a critical stage of the criminal proceeding, under *Mempa*.[11] This is consistent with the proposition that the relevant right of a suspect who is asked to testify at an inquest is his fifth amendment privilege against self-incrimination and not his sixth amendment right to assistance of counsel.

It is clear in Illinois that counsel could have accompanied Musil at the inquest if he had had one. An Illinois statute provides for that right.[12] As a matter of right, however, counsel could do nothing but advise the witness. Although the Massachusetts court, in *Kennedy*, mentioned examples of ways in which the magistrate or coroner might, in his "wide discretion" permit a witness or his counsel to participate to some extent in the proceeding, "There is no inherent right of any witness at an inquest to cross-examine other witnesses or to present evidence of his own." [13]

We do not believe that there inhere in coroners' inquests generally the dangers to fair ascertainment of truth at the trial comparable to those which led the Supreme Court to decide that lineups

---

6. Kennedy v. Justice of District Court of Dukes County (Mass., 1969), 252 N.E.2d 201, 205, omitting citations.

7. S.H.A. ch. 31.

8. United States Life Ins. Co. v. Kielgast (1889), 129 Ill. 557, 22 N.E. 467, 468. The case provides a history of the coroner at common law. See also: Adler, *Coroners Inquests: The Impact of Watts*, 15 U.C.L.A.L.Rev. 97 (1967–68) ; Inquest on Coroners, 49 Ill.B.J. 480 (1961).

9. People v. Jackson (1961), 23 Ill.2d 263, 178 N.E.2d 310, 313.

10. People v. Musil, *supra*, 227 N.E.2d p. 754.

11. People v. Murdock (1968), 39 Ill.2d 553, 237 N.E.2d 442, 445.

12. S.H.A. ch. 31, 18.1.

13. *Kennedy, supra*, 252 N.E.2d pp. 205–206.

are a critical pretrial stage, requiring counsel.[14]

In 1957, the Supreme Court of the United States held that it did not violate due process to exclude a witness' retained counsel from a proceeding before a state fire marshal to investigate the causes of a fire. It was said, "A witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by his own counsel, nor can a witness before other investigatory bodies. There is no more reason to allow the presence of counsel before a Fire Marshal trying in the public interest to determine the cause of a fire. Obviously in these situations evidence obtained may possibly lay a witness open to criminal charges. When such charges are made in a criminal proceeding, he then may demand the presence of his counsel for his defense. Until then his protection is the privilege against self-incrimination." [15]

We have considered the more recent decision in *Jenkins v. McKeithen*.[16] There the Supreme Court upheld the adequacy of a complaint challenging the validity of a state commission, created to investigate and make findings relating to violations of certain criminal law. In the principal opinion, fully concurred in by only three justices, it was said that the Court considered it inappropriate to rule on the extent to which such a commission must provide the procedural protections afforded a defendant in a criminal prosecution until first decided by the trial court. It was also said, "We do not mean to say that this same analysis applies to every body which has an accusatory function. The grand jury, for example, need not provide all the procedural guarantees al-

leged by appellant to be applicable to the Commission."

In our opinion, *Jenkins* by no means requires a holding that, apart from *Miranda*, a suspect who is a witness at an inquest must be attended by counsel unless he knowingly waives counsel.

We would have no difficulty in holding that voluntariness, under pre-*Miranda* rules, is all that must be shown in this pre-*Miranda* case, except for two decisions principally relied on by petitioner.

One of these is *White v. Maryland*.[17] There an unrepresented defendant pleaded guilty at a preliminary hearing. Arraigned later, he pleaded not guilty. At trial his guilty plea was introduced in evidence. Apparently Maryland law did not require him to plead at the preliminary hearing, but the Supreme Court held that "Whatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a stage as arraignment under Alabama law. For petitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel." [18]

*Arsenault v. Massachusetts* [19] presented facts similar to *White*, but the proceeding had occurred before *White* was decided. *Arsenault* established that the principle of *White* is retroactive.

*White* did not establish that a preliminary hearing in a criminal case is always a critical stage so that a defendant is entitled to the aid of counsel. The decision was that where a plea of guilty was in fact entered, the preliminary hearing was a critical stage. The emphasis was not upon the nature of the proceeding.

14. United States v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

15. *Re Groban* (1957), 352 U.S. 330, 333, 77 S.Ct. 510, 513, 1 L.Ed.2d 376, 380.

16. (1969), 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404.

17. (1963), 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193.

18. 373 U.S. 60, 83 S.Ct. 1051.

19. (1968), 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5.

Our present case differs from *White* and *Arsenault* in two principal respects: (1) The inquest (unlike the preliminary hearing) is not formally or traditionally a part of the prosecution; (2) Musil recounted facts while White and Arsenault entered pleas. Musil was informed that he need not testify. It does not appear that White and Arsenault were told they need not plead.

Although the pleas of White and Arsenault and the testimony of Musil were ultimately used against each in the same manner, a close reading of the *White* and *Arsenault* decisions persuades us that the distinction between the pleas on the one hand and the incriminating testimony on the other is sufficient to produce a difference in result. In the instance of testimony, the critical question is whether there was compulsion. A plea of guilty, however, involves not only a short-hand admission of incriminating facts, but may, in addition, involve a waiver of defenses or an application of legal principles. Apparently the Court considered that there is a real danger of unfairness if an accused is permitted to make the latter choices without advice of counsel or understanding waiver. For in both decisions the Court relied on the *Hamilton v. Alabama*[20] holding that "Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently."

■ We conclude that Musil had no sixth amendment right to be afforded advice of counsel before testifying at the inquest. And he had no right, pre-*Miranda*, to be afforded such advice as a precaution against compulsion.

■ The district court rested its decision upon one additional ground that because Illinois, by statute, provided that a witness at an inquest shall have the right to be represented by counsel,[21] the state's failure to provide counsel, without expense, to an indigent, is a de-

nial of equal protection. We find, however, no implication in the Illinois statute that counsel will be permitted to do more for a witness at an inquest than be present and advise the witness. There are many situations where an individual is free to be accompanied by counsel if he so chooses, but where it is not deemed a denial of equal protection if the state fails to provide counsel to accompany one who is unable to pay. We consider this such an instance. The importance of what counsel can do for him must be the touchstone.

On appeal here the warden presented the record of the trial at which petitioner was convicted. A careful examination reveals that there was not only police officer testimony of petitioner's oral admissions, but a reporter's transcript of interrogation of petitioner by an assistant state's attorney on November 14, 1959. The transcript bears petitioner's purported initials on each page and signature on the last page. He denied the initials, but not the signature. His answers included the details of the attempted hold-up and shooting and the activities of petitioner and his codefendant before and after these events. Testimony of other witnesses corroborated incidents concerning petitioner's possession of the gun from which the fatal bullet was fired, and his purchase of materials with which to clean it shortly after the shooting. His attempt to explain away the transcribed statements is difficult to believe. We are convinced beyond a reasonable doubt that if the inquest testimony had not been used to impeach petitioner he would nevertheless have been found guilty.

The judgment appealed from is reversed and the cause remanded with directions to deny the petition for habeas corpus.

The court gratefully acknowledges the dedicated and lawyerlike efforts of Kalvin M. Grove, a member of the Illinois bar, as appointed counsel for petitioner.

---

20. 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L. Ed.2d 114.

21. S.H.A. ch. 31, 18.1.