(No. 37194.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERBERT H. HOFFMAN, Plaintiff in Error.

*Opinion filed January 21, 1965.*

RICHARD J. FRIEDMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and GEORGE KENNEY, Assistant Attorneys General, and ELMER C. KISSANE and LESTER A. BONAGURO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Herbert H. Hoffman was found guilty of the murder of Virginia Edwards by a jury in the criminal court of Cook County and sentenced to the penitentiary for a term of 199 years. A constitutional question gives us jurisdiction.

The nude body of the deceased was found beaten and burned in a hotel room in Chicago. The defendant admitted having registered into the hotel with her the evening before as husband and wife. He testified, however, that he left the hotel room about 6 o'clock in the evening, returned about 6 o'clock the next morning and found her dead. A recitation of all the facts connecting defendant with the crime is not necessary.

Among other things defendant contends that he was denied due process when the prosecution, after his request, withheld evidence which was favorable to him and material to his guilt.

He states a pair of blue and white men's shorts, wet in the frontal area, were found by the police in the closet of the hotel room during their investigation, that his counsel asked to see the shorts and his request was denied. The People do not argue that such shorts were not found at the murder scene or that they are not available, rather they argue that defendant's request to see the shorts was not timely and that he has failed to show the materiality of the shorts.

While the record does not show whether shorts were found in the hotel room, it does reveal a persistent effort on the part of the prosecution to have all evidence on this point excluded. Officer Cunningham, the first officer to arrive at the scene of the crime, testified on cross-examination that he sent women's clothing and belongings of defendant to the crime laboratory. When asked what belongings of defendant were sent to the laboratory, he replied a radio, suitcases and men's clothing. He was asked to specify the items of men's clothing, but the People's objection was sustained. He was then asked if he had made a list of things that were sent to the crime laboratory to which objection was sustained. Later the officer named a number of things he sent to the crime laboratory. When asked if there could have been other things, he said there could have been but he

did not remember. Again he was asked if he had made an inventory and he said yes. When asked if a pair of men's shorts were in the inventory, the People's objection was again sustained. During re-cross-examination Cunningham's report showing the inventoried items was given to defense counsel. It did not list a pair of shorts. He then asked if Cunningham had found a pair of blue and white men's shorts, to which objection was sustained. He next asked if everything found in the room had been inventoried and again objection was sustained. Several more questions along this line were asked, objections were sustained and finally defendant's counsel was admonished not to pursue the subject.

During a recess later in the trial, defense counsel informed the court that he had read a police report dated July 1, 1959, which in addition to the items named by Cunningham, listed a pair of blue and white men's shorts found in the closet and described as being wet in the frontal area. He told the court that he wanted to know where the shorts were and who found them because they did not belong to defendant. The prosecution said it had no knowledge of such a report, but that it would look for the report.

The trial continued and officer Di Leonardi, another of the investigating officers, was called as a witness. On cross-examination he was asked if he had seen a pair of blue and white men's shorts and again the People's objection was sustained. He was then asked if he had seen any other items of clothing besides those he had already mentioned, to which he replied, not to his knowledge.

After the People rested their case, the court called a recess during which the prosecution gave defense counsel the report which recited that a pair of blue and white men's shorts, wet in the frontal area, were found in the closet. The report was signed by officer Di Leonardi.

The prosecution's objections to questions about the shorts were based on the assertion that the cross-examina-

tion was beyond the direct. It is sufficient to note that no objection was raised to the witnesses testifying on cross-examination as to any other items including clothing found in the room, without passing on the technical correctness of the objections or the rulings thereon.

The contention that the request for the shorts was not timely is based on the fact that defendant's counsel knew of the report concerning the shorts for about 3 weeks before the trial but made no request for them until the trial was in progress. There is nothing in the record to indicate that production of the shorts would have delayed the trial as is suggested in the People's brief.

And contrary to the assertion that the defendant did not show the materiality of the shorts, it appears obvious from the very item, its condition and where it was found, that it was material. They were material enough to be noted on the police report and are material enough to require their production upon defendant's request so he could inspect them for laundry marks or other clues. They were potentially as material, if not more so, than the items of the deceased's clothing offered and received in evidence.

The evidence concerning the existence and finding of the shorts, the defendant's request for their production and the prosecution's refusal was presented in a very piecemeal fashion. We believe, however, that officer Di Leonardi's report which recited that such shorts had been found in the closet constitutes a *prima facie* showing that such shorts were found, are in existence and are still in the possession of the police. The People concede that defendant requested that the shorts be produced. As we have pointed out, the shorts are material and the request for their production was timely under the circumstances of this case. In *Brady* v. *State of Maryland,* 373 U.S. 83, 10 L. ed. 2d 215, 83 S. Ct. 1194, the Supreme Court held that "* * * the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is ma-

terial either to guilt or to punishment * * *." 373 U.S. 83, 87, 10 L. ed. 2d 215, 218, 83 S. Ct. 1194, 1196.

The vast number of trial errors alleged by defendant are not likely to reoccur during the new trial of this case except for one dealing with 3 photographs of the deceased. The photographs show the deceased from three different angles as she was found nude on the bed. Two of the pictures were taken from the left side of the body and show it exposed from the hips to the head. The third picture was taken from the feet, which were spread apart wide and show the body exposed from the calves to the breasts.

Defendant admits that the admission of the photographs is discretionary with the trial judge and that these pictures had probative value in helping the jury to better understand the pathologist's testimony. He argues, however, that their probative value is outweighed by their shocking, gory and gruesome nature and that the pathologist could have demonstrated his testimony on a model, diagram, anatomical chart or his own person.

We are of the opinion that neither the admission nor exclusion of these photographs could, as a matter of law, be held to be an abuse of discretion. The pictures depict a brutal and intentional crime by a sadist and are bound to arouse feelings of horror and disgust in a normal person. We feel, however, that the description of the nature and extent of the wounds and burns inflicted upon the deceased could easily portray a much more gruesome image than that revealed by the photographs.

The judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*