(No. 39658.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JAMES MURDOCK, Appellant.

*Opinion filed May 29, 1968.*

554

WARD, J., took no part.
SCHAEFER, J., concurring.

HOWARD T. SAVAGE, of Chicago, (JOSEPH M. CAR-
RABOTTA and SHELVIN SINGER, of counsel,) appointed by
the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield,
and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED

G. Leach, Assistant Attorney General, and Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County the defendant, James Murdock, was found guilty of murder, rape and burglary. He was sentenced to concurrent terms of imprisonment for not less than 75 nor more than 199 years on the rape and burglary charges. The jury recommended the death penalty on the murder charge and he was sentenced to death. Defendant appeals directly to this court.

The record shows that in the early afternoon of May 7, 1964, a neighbor found the body of Mrs. Alvina Godlewski in bed in the living quarters behind her school supply and sporting goods store. There was testimony that markings on her body indicated that she had been manually strangled. The findings of a pathologist were that she had recently engaged in sexual intercourse and was intoxicated at the time of her death. The defendant's fingerprints were found on a storm window that had been removed from a bedroom window of the deceased's first floor apartment. Twelve days after the crime was committed the defendant surrendered himself after learning from his brother that he was wanted by the police. He at first denied being in the deceased's store or living quarters at any time but, when confronted with the fact that his fingerprints were on the storm window, signed a typewritten statement admitting that he had entered the room through the open window and taken $3 from the cash register, and $10 from a purse. No attorney was present for the defendant at this interrogation.

A coroner's inquest was held three days after the defendant had surrendered himself. He was taken to this inquest and advised by the coroner that he didn't have to

testify unless he wished to do so, and that "if you do testify, it must be of your own free will and accord, without any promise of reward or immunity, knowing full well that anything you say here today may be used either for or against you at this hearing or some future hearing." After having been so admonished the defendant testified and admitted that he had entered the deceased's living quarters and had taken money. He denied, however, that he had raped her or murdered her. At no time during the inquest was the defendant advised that he had a right to be represented by counsel.

The defendant pleaded not guilty to all three charges. Prior to trial he moved to suppress both the statements he gave at the police station after surrendering himself and his testimony at the coroner's inquest on the ground that when they were made he was neither represented by counsel nor advised of his right to be so represented. He further asserted that during his interrogation at the police station, which resulted in the statement, he was not advised of his right to remain silent. His motion to suppress was denied and both the statement and the testimony at the inquest were offered by the State during the trial and received into evidence. After the verdict defendant moved for a new trial on the same grounds, which motion was denied. On this appeal he renews these contentions and also asserts numerous other grounds for reversal.

We are confronted here with a post-*Escobedo* and pre-*Miranda* trial. The restriction of *Miranda* to prospective operation was announced in *Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, and consequently at the time of this trial our decision in *People* v. *Hartgraves*, 31 Ill.2d 375, governed the right to counsel in pre-indictment criminal investigations. In *Hartgraves* we noted that the fact that a defendant was not affirmatively warned that his confession might be used against him does not in and of itself render a confession incompetent. Rely-

ing upon *Haynes* v. *State of Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336, we held that the failure to warn the defendant and advise him of his right to remain silent was an attendant circumstance "which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession." (31 Ill.2d 380.) We further held in *Hartgraves* that an otherwise voluntary confession would not be rejected solely because the State did not affirmatively caution the accused of his right to have an attorney present. After reviewing the evidence on the defendant's motion to suppress, we are of the opinion that the trial court properly found that the statements given by the defendant at the police station were voluntary.

A further point urged by the defendant with reference to the statements at the police station is that since the first of these statements denied knowledge of any of the crimes committed in the deceased's premises, it should not have been admitted since it had no substantive or independent testimonial value. We disagree. In his subsequent statement the defendant admitted having committed the burglary. We are of the opinion that prior false or contradictory statements by an accused are admissible in evidence.

Defendant's argument that his testimony at the coroner's inquest should have been suppressed on the ground that he was not represented by counsel is likewise without merit. In support of his position he cites section 17.1 of the Coroners Act (Ill. Rev. Stat. 1963, chap. 31, par. 18.1) which provides that "any witness appearing at the inquest shall have the right to be represented by counsel." This provision, enacted in 1959, has never been construed to give an indigent witness the right to free counsel, even though such witness was then suspected of murdering the decedent. Defendant's contention was recently discussed by the court in *People* v. *Musil* (1967), 37 Ill.2d 373. There we held that testimony given at a coroner's inquest may be used

against the accused in a subsequent criminal proceeding, despite lack of counsel, so long as certain requirements are met. These requirements, set forth in *People* v. *Jackson,* 23 Ill.2d 263, call for affirmative proof showing that the accused was advised of his right to refuse to testify; that he was advised that any statements could be used against him; and that he knowingly and intelligently waived his constitutional right against self-incrimination. We believe that these requirements were met by the admonishment given to the defendant by the coroner.

We are not unmindful that, following our decision in *Musil,* the United States Supreme Court in *Mempa* v. *Rhay,* 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254, ruled that the holding in *Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, compels the conclusion that "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." (389 U.S. at 134, 19 L. Ed. 2d at 340.) The particular proceeding involved in *Mempa* was for the purpose of imposing sentence, however, and was not a coroner's inquest. While there can be no doubt that imposition of a sentence is a "stage of a criminal proceeding" we are unwilling to extend this concept to include a coroner's inquest, which is primarily concerned with the cause of death, even when a witness testifying at the inquest may be suspected of murdering the decedent. On the basis that a coroner's inquest is not a "stage of a criminal proceeding," we conclude that the decision in *Mempa* is inapplicable to the situation before us. Consequently, no error was committed by the trial court's refusal to suppress defendant's testimony at the coroner's inquest.

We next consider defendant's contention that he was denied due process as a result of the prosecution's failure to disclose evidence which was favorable and material to the defense. Subsequent to the trial it was disclosed that police officers had interviewed Mary Ann Panek and made

a report and thereafter an assistant State's Attorney took a sworn statement from Miss Panek. Both the police report and the sworn statement were to the effect that 15-year-old Mary Ann Panek had entered the deceased woman's store through an unlocked front door at approximately 12:30 P.M. the day the body was found. She walked to the rear of the store and, upon seeing or hearing no one on the premises, left by the same door. The State admits the existence of this statement and further admits its existence was intentionally not revealed to defense counsel. It attempts to excuse this failure to disclose, however, on the ground that the statement was not material to the facts in this case. The record reveals that the deceased woman was last seen alive at approximately 10:00 P.M. on May 6, 1964. Her body was discovered the following day at 2:00 P.M. by a neighbor who observed it through the ground floor open window of the deceased's apartment. The police arrived at 2:05 P.M. and found, according to their testimony at the trial, that both the double doors in front of the deceased's store and the door leading from the rear of her apartment were locked. It was further ascertained that the front doors could only be locked or unlocked with a key and that the rear door had been locked from the inside with the key remaining in the keyhole. The only other means of ingress and egress to the premises was through the window in the bedroom.

These facts, coupled with the facts that the defendant admitted entering the bedroom by way of the window and that only the deceased's and the defendant's fingerprints were found on the window, supported the prosecution's theory that only the defendant could have committed the rape and murder.

It should be noted that medical testimony adduced at the trial indicated that the deceased woman had engaged in intercourse prior to her death. There was also evidence that she was intoxicated. It was defendant's theory at the

trial that some unknown person had engaged in intercourse with and strangled the deceased before the arrival of the defendant. The prosecution ridiculed this theory by commenting upon the locked doors. Since the locked doors played such a key role in the circumstantial evidence against the defendant, evidence that the front door was unlocked at some time prior to the discovery of the deceased's body could hardly be considered irrelevant or immaterial to the reconstruction of the crime. Such evidence, in fact, would be consistent with defendant's claim that a third party had been present to engage in sexual intercourse and strangle the deceased before or after the defendant arrived on the scene. It is our opinion that Miss Panek's testimony was material to the defense and that defendant was denied due process as a result of the prosecution's failure to disclose the existence of her statement. *People* v. *Hoffman,* 32 Ill.2d 96; *Giles* v. *Maryland,* 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793; *Miller* v. *Pate,* 386 U.S. 1, 17 L. Ed. 2d 690, 87 S. Ct. 785.

As we have noted earlier in this opinion the defendant was charged with and, after a single trial, was found guilty of three distinct crimes: burglary, rape and murder. He was sentenced to 75 to 199 years on the burglary and rape charges and was sentenced to death for the murder. In view of our finding that the defendant's right to due process was violated, it is our opinion that the judgments and sentences relating to each of these crimes should be reversed and remanded for a new trial.

Having determined that the entire cause must be remanded we now consider those issues raised by the defendant which could foreseeably recur at a subsequent trial.

Over defendant's objection the trial court admitted into evidence two photographs of the deceased woman which were apparently taken shortly after her body was discovered. In view of the nature of her death, of course, the pictures are admittedly gruesome and defendant contends

that their introduction into evidence constituted reversible error since they have no probative value upon any fact or issue in the case and were introduced solely to prejudice and inflame the jury. He also charges that one of the photographs was "posed" when reviewed in light of the testimony of the prosecution's witnesses.

We are of the opinion that the admission of the photographs cannot be said, as a matter of law, to have been an abuse of discretion on the part of the trial judge. The judge, in overruling defendant's objections specifically held that the photographs have a bearing "on the nature in which the death occurred" and the "nature in which the sexual act took place and in the manner in which they corroborate or disprove the statement made under oath by this defendant as to the manner in which he found the body." Our examination of the record supports this view and, in the absence of any evidence that the photographs were posed, conclude that their admission into evidence did not constitute reversible error.

Objection is also made to the testimony of the coroner's pathologist in which he detailed the injuries sustained by the deceased. Such detailed testimony, according to the defendant, was unnecessary to the pathologist's opinion that the deceased had died of asphyxiation by manual strangulation. We first note that no objection to this testimony was made at the trial and further that portions of the testimony relating to the physical condition of the corpse were the result of defendant's cross-examination. We further feel that the testimony of the pathologist was proper in that it provided the jury with the facts upon which his final opinion was predicated.

Defendant next charges that he was prejudiced by the fact that photographs of himself were introduced into evidence by the prosecution. He contends that these photographs communicated the defendant's previous criminal history to the jury and were totally irrelevant to any issues

in the case. We agree that the front and profile views of the defendant in the photographs might very well suggest to the jury that they were "mug" shots taken for police files and, since there was no probative purpose for their admission into evidence, find that the photographs were erroneously admitted. We need not consider whether or not such evidence alone would be so prejudicial as to require a new trial.

Defendant calls our attention to certain comments made by the court and the prosecutor which he contends were prejudicial to him. He specifically complains of the comments made by the court after the coroner's pathologist testified with regard to the possibility that the intercourse which the decedent had engaged in prior to her death, was performed with her consent. We agree that the judge's comment that "it is my view that the opinion was very far afield" was prejudicial to the defendant and completely uncalled for. We trust that both the court and the State will take precautions to see that no such prejudicial statements occur in a future trial.

The jury received 22 instructions at the close of the evidence, of which 6 had been submitted by the defendant. He complains, however, that many of the instructions submitted by him were refused by the court on the ground that they were merely repetitious of the State's instructions when, in fact, they were not. We recognize that under our jury system each side to a dispute, be it civil or criminal, attempts to have submitted to the jury those instructions which are most likely to favor their theory of the case. We further recognize that, particularly in criminal cases, one instruction can appear to be substantially similar to another when in fact the addition or deletion of a key word or phrase in one can suddenly alter it from the other. Because of the initial appearance of similarity, however, we agree with the defendant that the party whose instruction is considered first on a particular point often has the ad-

vantage over the other side, unless both instructions are carefully examined for differences in phrasing and nuance. Such an examination is particularly necessary in a criminal case. While we do not suggest which party's instructions should be given first consideration, we caution the court in criminal proceedings, therefore, to inspect each instruction carefully before tendering one and refusing the other in order that neither side may be prejudiced by the mere fact that his instruction was considered last.

With reference to those instructions submitted by the State, we find that several of them have been disapproved of by this court in prior cases and trust they will not be used in a subsequent trial of this cause. This same admonition, of course, is extended to those instructions which the State admits are improper, notably instruction 15.

While defendant raises numerous other points in his brief we find that they are either without merit or unlikely to arise in a future trial. The decision of the circuit court of Cook County is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

Mr. JUSTICE SCHAEFER, concurring:

I agree that the convictions must be reversed because the prosecutor concealed the identity of an important witness, but I do not agree that the testimony of the defendant at the coroner's inquest was properly admitted in evidence.

The majority sustains the admission of this testimony because it is "unwilling to extend" the concept of a "criminal proceeding" to include a coroner's inquest. The characterization of a coroner's inquest as a stage of a criminal proceeding does not, however, depend upon an act of will on the part of the members of this court, but rather upon

the incidents and attributes of such an inquest. A coroner's inquest is a proceeding of some kind and it certainly is not a civil proceeding. As this court said in *Peoria Cordage Co.* v. *Industrial Board,* 284 Ill. 90, 96: "If the coroner had any information which in the exercise of his discretion authorized him to act, his authority was limited to an inquiry into the physical facts and obtaining and securing evidence for the apprehension and prosecution of any person implicated in the commission of a crime. In no case would the verdict be admissible for the purpose of fixing civil liability."

Moreover, in *Lyons* v. *People,* 137 Ill. 602, 616-7, this court squarely characterized a coroner's inquest as a criminal proceeding. "The defendant was not obliged to appear as a witness and take an oath before the coroner's jury, nor to answer any question that would criminate himself. His act in testifying there was voluntary. Our statute provides that 'no person shall be disqualified as a witness in any criminal case *or proceeding* by reason of his interest in the event of the same as a party or otherwise.' (Crim. Code Rev. Stat. chap. 38, sec. 426; Starr & Cur. sec. 486, page 863). It has been held, that, under a statute like this where a prisoner may testify on his own behalf in all criminal proceedings if he desires, his testimony taken under oath at the preliminary examination, if it appears to have been freely given, without compulsion or promise, is admissible as a confession. (*People* v. *Kelly,* 47 Cal. 125; 1 Greenl. on Ev.—14th ed.—sec. 225 and note (a); Whart. Crim. Ev. sec. 669 supra)." (See also *People* v. *Jackson,* 23 Ill.2d 263, 266; *Novitsky* v. *Knickerbocker Ice Co.,* 276 Ill. 102, 105.) Other courts have similarly characterized coroner's inquests as criminal proceedings. See *Acker* v. *Anderson County,* 77 S.C. 478, 58 S.E. 337; and *State* v. *Allison,* 116 Mont. 352, 153 P.2d 141.

To sustain the admissibility of the defendant's testimony at the inquest the majority relies entirely upon *People* v.

*Musil* (1967), 37 Ill.2d 373, where we held that the testimony of an accused who was not represented by counsel at a coroner's inquest held in 1959 could be used to impeach the testimony that he gave at his trial, which was held in January of 1960. But the issues in that case were decided on the basis of "our rules as they then existed. Pursuant thereto 'any failure to advise the defendant of his constitutional rights and the failure to provide him with counsel are only attendant circumstances in deciding whether his confession was voluntary' ". (37 Ill.2d at 377-78.) Our concern in that case thus centered upon whether the absence of counsel at the inquest necessarily meant that the defendant's confession was involuntary.

In November of 1967, after our decision in the *Musil* case, the Supreme Court of the United States decided *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254. That case involved the right of a defendant "to counsel at the time of sentencing where the sentencing has been deferred subject to probation." (389 U.S. at 130, 19 L. Ed. 2d at 338.) In its opinion the court discussed its decisions in *Townsend v. Burke* (1948), 334 U.S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252, *Moore v. Michigan* (1957), 355 U.S. 155, 2 L. Ed. 2d 167, 78 S. Ct. 191, *Hamilton v. Alabama* (1961), 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157, and also referred to its decisions in *Reece v. Georgia* (1955), 350 U.S. 85, 100 L. Ed. 77, 76 S. Ct. 167, and *White v. Maryland* (1963), 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050. The opinion continued:

"All the foregoing cases, with the exception of White, were decided during the reign of Betts v. Brady, 316 U.S. 455, 86 L. Ed. 1595, 62 S. Ct. 1252 (1942), and accordingly relied on various 'special circumstances' to make the right to counsel applicable. In Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R. 2d 733 (1963), however, Betts was overruled and this Court held that the Sixth Amendment as applied through the Due

Process Clause of the Fourteenth Amendment was applicable to the States and, accordingly, that there was an absolute right to appointment of counsel in felony cases.

"There was no occasion in Gideon to enumerate the various stages in a criminal proceeding at which counsel was required, but Townsend, Moore, and Hamilton, when the Betts requirement of special circumstances is stripped away by Gideon, clearly stand for the proposition that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134; 19 L. Ed. 2d at 340.

*Mempa* makes it clear that the sixth amendment right to counsel is directly applicable and that disposition of this case must turn upon whether the coroner's inquest was a stage of the proceeding at which the substantial rights of the defendant could have been affected. The record leaves no doubt as to the answer to that question. At a time when he alone was suspected of the murder, the defendant was called upon to testify at a formal proceeding, the purpose of which was to determine "by whom * * * the said dead body came to its death * * *." (Ill. Rev. Stat. 1963, chap. 31, par. 15.) The governing statute, as amended in 1959, provided: "Any witness appearing at the inquest shall have the right to be represented by counsel." (Ill. Rev. Stat. 1963, chap. 31, par. 18.1.) Despite the statute and the decisions of the Supreme Court of the United States, particularly *White* v. *Maryland* (1963), 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050, the defendant was not advised of his right to be represented by counsel, and he can not be said to have waived that right.

For these reasons, in my opinion the admission of the defendant's testimony at the coroner's inquest was erroneous.