(No. 41167.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* LEON CAGLE, Appellant.

*Opinion filed January 29, 1969.*

PHILIP H. NYE, JR., of Rochelle, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN L. MOORE, State's Attorney, of Oregon, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Leon Cagle, was found guilty of burglary in a jury trial in the circuit court of Ogle County and sentenced on November 9, 1967, to a term of from 2 to 10 years in the State penitentiary. He has appealed, as an indigent, directly to this court on the ground that he was denied due process of law by the suppression of certain evidence favorable to him. Defendant also contends that reversible trial errors were committed in not allowing him

to use a police report to impeach the police officer testifying for the State, in denying defendant's motion to remove from the courtroom three cases of beer that were not offered in evidence, and in defining reasonable doubt and how to justify an acquittal in the jury instructions. Defendant urges further that the State did not prove his guilt beyond a reasonable doubt, and, in the alternative, that this is a proper case for the court to reduce defendant's sentence.

It appears from the testimony of the owner of the Cherry Avenue Tap, Rochelle, Illinois, that sometime during the night of September 22, 1967, and early hours of September 23, the beer shed in back of his tavern had been burglarized and five cases of beer stolen. A police officer testified that at approximately 6:oo A.M. on September 23 defendant was seen in the company of two other individuals who were each carrying a case of beer in the vicinity of the Cherry Avenue Tap, and that defendant dropped the beer after having been seen by the police officer. The officer chased the individuals, apprehended Jimmy Montgomery and arrested him; and several hours later brought the three cases of beer to the police station. Defendant was not allowed to use the officer's police report to impeach his testimony identifying defendant, and that report was not offered in evidence by the prosecution, nor admitted by the court when offered by defendant.

On behalf of the State, Jimmy Montgomery testified that he broke into the Cherry Avenue Tap in the morning hours of September 23, 1967. The first time he and Dan Smith took two cases of beer, and the second time he, Dan Smith and defendant re-entered the tavern and took three cases of beer. Montgomery also stated that he had not been tried for the burglary and was released on bond at the time of the trial. Moreover, with respect to his testimony and role in the case, the State refused to answer defend-

ant's request in his motion for a bill of particulars for any written confession of any alleged accomplice.

Defendant did not testify. Dan Smith, however, called as a witness by defendant, denied his own participation in any burglary, and denied that he and defendant were involved in the second "break-in" described by Montgomery. Smith further testified that the cases of beer they were carrying when seen by the police officer had been obtained at the home of Jimmy Montgomery; that when he saw a police car about two blocks away he started running, and defendant followed him because they had been drinking at a party and didn't want to get picked up, since they were under age.

The court denied defendant's motion to remove from the courtroom the three cases of beer which were present throughout the trial but never introduced in evidence. The jury found defendant guilty as charged. Defendant's counsel made a statement of mitigating factors, but no statement in mitigation or aggravation was made by the State, and the court imposed the aforementioned sentence.

With respect to the constitutional issue presented on this direct appeal defendant contends that there was a violation of due process of law by the suppression of favorable evidence requested by him by the denial to him of the copy of the confession of his alleged accomplice, Montgomery, and by the denial to him of the police report which apparently recited that the beer was taken by unknown persons and omitted any reference to defendant.

The State contends that there was no suppression of evidence because defendant did obtain a copy of the police report during the trial and was given a recess to examine it, and failed to lay a proper foundation for it to be admitted in evidence.

This court has consistently held that an accused person is entitled to the production of a document that is contra-

dictory of the testimony of a prosecution witness. (*People* v. *Neiman*, 30 Ill.2d 393, 399; *People* v. *Cole*, 30 Ill.2d 375, 381; *People* v. *Wolff*, 19 Ill.2d 318, 323, 327; *People* v. *Moses*, 11 Ill.2d 84, 89.) In the *Moses* case the court stated at page 89, after noting that identification of the accused was crucial (as in the case here) :

"Where it appears that there is evidence in the possession and control of the prosecution favorable to the defendant, 'a right sense of justice demands that it should be available, unless there are strong reasons otherwise.' [Citation.] We hold, therefore, that it was error to refuse to turn over the records in question."

Moreover, we have expressly adopted in the *Wolff* case at page 327 the Federal rule, originally promulgated in *Jencks* v. *United States*, 353 U.S. 657, 1 L. Ed. 2d 1103, 77 S. Ct. 1007, and incorporated in a Federal statute (18 U.S.C. sec. 3500) construed in *Palermo* v. *United States*, 360 U.S. 343, 3 L. ed. 2d 1287, 79 S. Ct. 1217, that "where the relevancy and competency of a statement or report has been established, the trial judge shall order the document delivered directly to the accused for his inspection and use for impeachment purposes."

Although the prosecution here did deliver to the defendant the requested favorable police report which referred to the burglary by unknown persons, the ruling of the trial court in effect prohibited *use* of the report even for impeachment purposes.

From the record it appears that after the prosecution's principal witness, the police officer who apprehended defendant's alleged accomplice Montgomery, testified on direct examination that he saw defendant Leon Cagle carrying a case of beer, the court, on cross-examination, denied defense counsel the right to impeach that identification by the witness's own police report.

On cross-examination the officer was asked, "At the time you saw this subject you didn't know who he was, did

you?" The officer answered, "Yes, I did." Defense counsel then asked, "And you never mentioned his name in the police report?" Objections were sustained. Defense counsel then asked the officer if he filed a report, and he replied that he did. The police report was marked defendant's exhibit 1 for identification, and defense counsel asked the officer, "Where in that report is it indicated that you in fact saw Leon Cagle in the early hours of September 23, 1967?" The trial court sustained the objection of the prosecution on the ground that the report would speak for itself, and precluded defense counsel from laying any foundation for introducing the report.

These rulings of the trial court were predicated on the erroneous conception of the law that since the police report was not mentioned in the direct examination of the police officer, the report could not be mentioned on cross-examination, even for impeachment purposes. Thus the trial proceedings reveal technical compliance with the rule that defendant be furnished on request a copy of favorable evidence, including police reports; but they also show how effectively defense counsel was deprived of using the report for impeachment purposes. Merely giving defendant access to the report, while depriving him of the use of it, in no way constitutes compliance with the Illinois rule.

This court has condemned conduct by the prosecution deemed evasive of the rule requiring disclosure of favorable evidence to defendant for impeachment purposes. (*People v. Cole*, 30 Ill.2d 375, 381.) In the *Cole* case, in holding that defendant was entitled to a new trial because of the failure of the prosecution to produce certain statements of witnesses, this court expounded:

"In *Moses* we declared the State has no interest in interposing an obstacle to the disclosure of facts unless it is interested in convicting accused parties on testimony of untrustworthy persons. The failure of the State to call the two officers to testify * * * cannot

be relied upon by the prosecution *to evade this rule.* If contradictory statements were made by the prosecuting witness to these two missing officers then the defendant by all means should have the benefit for impeachment purposes. Justice requires a full and fair disclosure." (Emphasis supplied.)

If failure to call as witnesses the officers to whom the favorable statements had been made was deemed evasive of the Illinois rule, then, perforce, allowing the police officer to testify for the prosecution and identify defendant, but denying defense counsel the right to impeach that testimony by the officer's own report, as was done here, is equally evasive of the rule.

Unlike *People* v. *Wolff,* 19 Ill.2d 318, 327, cited by the State, where the rejected evidence could not reasonably have affected the verdict since defendant there was identified by three persons present when the crime was committed, who viewed defendant under favorable conditions, here there was no other identification of defendant as a participant in the crime, other than the testimony of an alleged accomplice who had not yet been tried for his admitted burglary at the time of defendant's trial. Consequently, here the officer's testimony, and any possible impeachment of it, was crucial.

Defense counsel argues that the Illinois rule limiting the use of such favorable reports to impeachment purposes at the time of trial is too restrictive in that it hinders trial preparation and therefore violates the due process requirements for a fair trial. In the view we take of this case it is not necessary to consider that issue, since the trial court here failed to follow the Illinois rule, and in effect precluded the use of the favorable police report, even for impeachment purposes. In our judgment such action was tantamount to a suppression of evidence and itself constituted a violation of the due process clause. *Giles* v. *Maryland,* 386 U.S. 66, 100, 17 L. Ed. 2d 737, 87 S. Ct. 793;

*Brady* v. *Maryland,* 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *Napue* v. *Illinois,* 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 79 S. Ct. 1173; *People* v. *Wolff,* 19 Ill.2d 318, 323.

In the *Brady* case, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment; and in the *Giles* case, the concurring opinion emphasized the constitutional dimensions of withholding police reports helpful to the defense, stating: "Nondisclosure—deliberate withholding—of important information of the type described [police reports], which is in the exclusive possession of the State is, in my judgment, not reconcilable with the concept of a fair trial and with the Due Process Clause."

In the *Napue* case the United States Supreme Court held that there was a violation of due process where the State, although not soliciting false evidence, allowed it to go uncorrected, where it relates to the credibility of a witness.

This court also recognized the constitutional implications of such nondisclosure in the *Wolff* case at page 327 where we commented that " 'the commands of the Constitution were * * * close to the surface' of the decision in the *Jencks case,"* which promulgated the rule requiring the production of favorable evidence in the possession of the prosecution.

When the rulings of the trial court here are measured by the analyses of law set forth in those cases, it is evident that even though defendant was given access to the police reports, by preventing defense counsel from effectively using such reports to impeach the officer's testimony identifying defendant on direct examination, the court violated not only Illinois criminal procedural law, but the constitutional doctrine of due process of law.

A review of this record reveals other reversible trial errors. Defendant complains of the State's Instruction No. 2 defining "reasonable doubt." That instruction provided:

"The Court instructs the jury, that a doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation and consideration of all the evidence in the case and unless it is such that, were the same kind of doubt interposed in the graver transactions of life it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty.

"If, after considering all the evidence in the case, you can say you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt."

This court has repeatedly held that the legal concept of "reasonable doubt" needs no definition, and that where an involved instruction on that concept is given it may be deemed prejudicial error. *People* v. *Davis,* 406 Ill. 215, 220; *People* v. *Casey,* 350 Ill. 522, 535; *People* v. *Schuele,* 326 Ill. 366, 372; *People* v. *Klein,* 305 Ill. 141, 150.

In the *Schuele* case the court stated at page 372: "It [reasonable doubt] is a term which needs no definition, and it is erroneous to give instructions resulting in an elaboration of it."

It is patent that the controversial instruction No. 2 included not only an elaborate definition of reasonable doubt, but it also implied that the law requires that an acquittal be justified in violation of the elementary precept of our jurisprudence that a man is presumed innocent until proved guilty beyond a reasonable doubt. An instruction containing the phrase "to justify acquittal" was criticized in the *Klein* case. Consequently to clear the underbrush of vestigial instructions that are contrary to the tenor of the law of the past century, we expressly overrule that portion of *Miller* v. *People,* 39 Ill. 457, cited by the State, which gives appro-

bation of any such complicated instructions. See Committee Comments, Ill. Rev. Stat. Anno., 1961, ch. 38, § 3—1.

In our opinion it was also error for the trial court to refuse to order that the three cases of beer be removed from the courtroom, since none of them were introduced in evidence and their presence, particularly in the light of the State's Attorney's reference to them in his closing argument, was tantamount to bringing to the jury's attention matters which were not in evidence.

On the basis of the violation of the constitutional doctrine of due process of law in the conduct of the trial, and the other reversible trial errors, the judgment of the circuit court of Ogle County is reversed and the cause remanded for a new trial. It is, therefore, unnecessary to consider the sufficiency of the evidence of guilt or the cogency of the mitigating factors urged in defendant's appeal.

*Reversed and remanded.*