THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES HOWZE, Defendant-Appellant.

(No. 69-169;

Fifth District—August 9, 1972.

G. MORAN, P. J., dissenting.

Thomas Meyer, of Belleville, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (Kenneth J. Juen, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant appeals his conviction in a jury trial of the crime of murder. The facts show that on March 8, 1969, a group of people were assembled in the residence of Patricia Howze, who was defendant's sister and also the girlfriend of the deceased, Carl Thomas. The group consumed a large quantity of liquor between the evening of March 7 and the afternoon of March 8. Those present at the party during the afternoon of March 8 included Dianne Weston, Norville Thomas (who is the brother of the deceased), Velma Beckley, Harry Fair, Laverne Taylor, Frank Cotton, and the deceased, Carl Thomas. Also present at the apartment dwelling during that afternoon were Julius Howze, who is the defendant's younger brother, and Patricia's two small children, Von Darvin and Tywanna. Tywanna, who was seated in the lap of Velma Beckley, took a piece of candy for herself. Laverne Taylor testified that this angered Velma, that Velma therefore spanked the child and that Julius Howze objected to Velma's punishing his little niece, since Velma was not the child's mother. Julius' objection prompted Carl Thomas to tell him to leave the premises. When he refused, Thomas began hitting him. Thomas was restrained by Harry Fair, whereupon Julius left the apartment dwelling. He ran down 19th Street, where he came upon his older brother, the defendant, at the intersection of 19th Street and Central. Upon learning what had just happened, defendant decided to go to Patricia's house. Julius accompanied him.

Defendant arrived and entered the front door of his sister's apartment. He proceeded through the living room to the threshold of the kitchen where he met the deceased, who was standing in the kitchen on the other side of a stepdown entranceway. Laverne Taylor testified that defendant struck the first blow which caused the deceased to fall backward to the floor. Harry Fair, who was seated at the kitchen table during this incident, testified that after the deceased fell backwards to the floor, he observed a revolver in defendant's hands and that he heard a shot ring out. Laverne Taylor testified that she was standing between the refrigerator and the back door in the kitchen during this incident, and that when the deceased tried to get up, she observed fire from a small gun in defendant's hand and heard a shot. After the shot was fired, defendant ran out the back door. The deceased died from the gunshot wound two weeks later.

The defendant testified that he had a fight with Thomas in the kitchen

of his sister's home on the day in question, but that he did not shoot the deceased as he had no gun with him at the time.

Defendant's first contention is that he was denied due process of law guaranteed by the Fourteenth Amendment to the United States Constitution when the prosecution failed to disclose to the defense the existence of a witness, Betty Burries, and the contents of her oral statement to the prosecution which allegedly contained evidence favorable to the defendant. The factual setting for this contention must be stated. The State presented its case in chief on July 16 and July 17 and rested. On July 17 defendant presented witnesses in his behalf and also testified in person, denying that he shot the deceased. On July 18 after court convened defendant rested and the State thereupon called as a rebuttal witness, Mary Burries, the girlfriend of the defendant. The defense objected to the witness on the ground that her name was not contained in the list of witnesses furnished the defendant by the State. Over the objection the witness was allowed to testify. She stated that defendant had been at her house about noon on the date of the shooting and that he returned later during that day and said that he was in trouble, that he had shot a man, something about "Ninety-nine," (Julius, defendant's brother). After the State concluded its questioning of Mary Burries defendant's attorney requested and was given leave to question the witness in private. Upon the cross-examination which followed the witness then stated that the defendant returned to her home at a later time on the day in question and told her that some man had been shot, she didn't know for sure if he told her that he had shot the man. She further stated that she was not sure that defendant shot the man, not sure it was about "Ninety-nine," was not sure about anything and did not remember what defendant told her. Approximately three weeks after the trial was concluded defendants' attorney took an unsworn question and answer statement from Betty Burries, the mother of Mary Burries. In the statement she related that Mr. Stacker, (an investigator for the St. Clair County State's Attorney's Office) came to her house the evening before Mary testified with a subpoena for Mary's appearance and that he returned the next morning and took Mary to the courthouse. A short time later the same morning Mr. Stacker returned and asked her (Betty) to accompany him to the courthouse. She was taken to a room where a gentleman (an Assistant State's Attorney) was talking to Mary. The statement then shows the following colloquy between Betty and the Assistant State's Attorney as related by Betty:

"A. And he asked me did James come back to my house. I told him, 'No, sir, not as I knows; I ain't seed him.' I went over to the Alabama

and got me a beer and come back and I was drinking my beer and I hadn't saw him no more.

Q. Did you tell him you didn't see him the rest of that day?

A. Yes, sir, I told him I didn't see him at all. He didn't come back to my house.

Q. Did he tell you anything about Mary Elizabeth telling him that James had come back?

A. No, sir, and so he told me that, 'Mrs. Burries, that will be all, you won't have to go up [to testify].' "

In this same statement Betty Burries said that Mary told her that she had testified at the trial that James had returned to the house a second time on the day of the shooting but that was not true, it was a story, that she was scared and nervous and was trying to help James.

It is defendant's position that as a result of the incident which occurred in the room of the courthouse prior to the rebuttal testimony of Mary Burries, the State was possessed of information or knowledge that Betty Burries would contradict the testimony given by Mary by saying that, other than the time she went to the Alabama for a beer, she was home all day and that defendant never returned the remainder of that day, and accordingly could not have made the statement to Mary that he was in trouble because he had shot a man over "Ninety-nine." This information was alleged to be favorable to defendant and he argues that he was denied due process of law when the prosecution failed to disclose it to him. We parenthetically note here that the defense made no request for favorable evidence or for statements of witnesses.

■■  The subject of the extent of the obligation of the prosecution to disclose to the defense information or material which might be favorable to an accused in the preparation of his defense has received considerable attention and consideration in recent years. Now well established is the rule which requires the prosecution, upon request, to furnish statements in their possession or control to the defense during the trial for impeachment purposes. (*People v. Wolff*, 19 Ill.2d 318, 167 N.E.2d 197, and *People v. Cole*, 30 Ill.2d 375, 196 N.E.2d 691.) But there are other dimensions of the problem that are involved in the case under consideration, namely, whether the obligation to disclose pertains to favorable information or material other than statements useful for impeachment purposes, whether disclosure of favorable information or material must be made prior to trial and whether there must be a request by the defense for disclosure of favorable information or material.

In *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194, the Supreme Court held that "*  *  *  the suppression by the prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment \* \* \*." Although there are antecedent authorities the *Brady* case has generally served as the genesis for the development of the extension of the obligation of the prosecution to disclose evidence or information within their possession or control beyond the requirement to furnish statements for impeachment purposes. The reach of the obligation has been extended to require pre-trial disclosure of any material or information that might be favorable to the defendant in preparing a defense irrespective of whether there has been a demand or request therefor. (*Cf. Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842; *Giles v. Maryland*, 386 U.S. 66, (concurring opinion by Mr. Justice Fortas); *State v. Fowler* (1966), 101 Ariz. 561, 422 P.2d 125; *McMullen v. Maxwell* (1965), 3 Oh.St.2d 160, 209 N.E.2d 449; *ex parte Cherry* (Texas, 1970), 456 S.W.2d 949; *State v. Thompson* (Mo., 1965), 396 S.W.2d 697.) The American Bar Association's project on standards for criminal justice, in their Standards Relating to Discovery and Procedure Before Trial, section 2.1 (c) has recommended that "\* \* \* the prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." Section 2.2 of the same Standards makes it clear that the disclosure is to be made irrespective of any request or demand therefor and provides that the obligation appends at the pretrial stage of the proceeding.

In a series of cases concerned with the question the Illinois Supreme Court has adopted and expanded the *Brady* rule, in one case apparently to the breadth of the American Bar Association recommended Standard. In *People v. Hoffman*, 32 Ill.2d 96, 203 N.E.2d 873, it was held error for the prosecution to refuse to produce upon request an item of clothing. The decision was based on *Brady*. In *People v. Murdock*, 39 Ill.2d 553, 237 N.E.2d 442, it was held to be a denial of due process when the prosecution failed to disclose evidence (a sworn statement and a police report) which contained information favorable to the defense in that it countered the prosecution's theory of the case and supported defendant's theory that a third party had committed the crime. Defendant did not learn of the existence of the evidence until subsequent to the trial so the duty of disclosure was found irrespective of a demand by the defense. The criteria applied in this case appear to equate with the American Bar Association recommended Standard, *supra*. In *People v. Cagle*, 41 Ill.2d 528, 244 N.E.2d 200, it was held that defendant had been denied due process when the prosecution suppressed favorable evidence (a confession of an alleged accomplice and a police report) requested by the defendant. The opinion recites defendant's argument that the Illinois

rule limiting the use of such favorable reports to impeachment purposes at the time of trial is too restrictive in that it hinders trial preparation and therefore violates the due process requirements for a fair trial. The court stated "In the view we take of this case it is not necessary to consider that issue, since the trial court here failed to follow the Illinois rule, and in effect precluded the use of the favorable police report, even for impeachment purposes." The court held that the action by the prosecution was tantamount to a suppression of evidence and itself constituted a violation of the due process clause. In *People v. Moore*, 42 Ill.2d 73, 246 N.E.2d 299, the Supreme Court, citing only *Brady v. Maryland, supra*, and omitting any reference to the *Murdock* and *Cagle* cases, affirmed a conviction over defendant's contention that there had been an unconstitutional concealment of evidence upon the ground that defendant had failed to show by a preponderance of evidence that the prosecution had withheld favorable material evidence which had been requested by him. In a dissenting opinion Mr. Justice Schaefer argued with considerable force that a request from the defense should not be necessary to give rise to the duty of the prosecution to disclose favorable information. He stated: "Essential fairness, rather than the ability of counsel to ferret out concealed information, underlies the duty to disclose." In *People v. Sumner*, 43 Ill.2d 228, 252 N.E.2d 534, it was disclosed that the prosecution at the time of trial had eight investigative reports which had not been made available to the defendant despite his request for copies of statements, although three other statements had been furnished. The State took the position that the withholding of the materials was not a suppression or concealment of evidence and that the failure to furnish them to the defense for use in impeachment, though concededly error, was harmless error. The court rejected the State's argument and found it was error to withhold the statements. The court relied upon *Brady v. Maryland, supra; People v. Cagle, supra*, and section 2.1 (c) of the American Bar Association Standards Relating to Discovery and Procedure Before Trial.

■■ Notwithstanding the favorable reference to the Standards of the American Bar Association contained in the *Sumner* case, and the adoption of a rule in the *Murdock* case that was apparently in direct alignment with those Standards, our Supreme Court nevertheless stopped short of obligating the prosecution to disclose information or material favorable to the defense in the absence of a request or demand therefor. Supreme Court Rule 412 (c) (Ill. Rev. Stat., ch. 110A, sec. 412 (c) ) which became effective October 1, 1971, is patterned after section 2.1(c) of the American Bar Association Standards but the obligation to disclose is, by sub-section (d) of rule 412, expressly limited to instances where

a request or demand is made by the defense. Whether the rule represents a regression from the case law or constitutes a reasonable compliance with the requirements of due process and fundamental fairness we cannot here decide. It must be sufficient for us to say that it is the rule in Illinois. Although the trial of defendant occurred prior to the adoption of Supreme Court Rule 412 we think it nontheless indicative of the law to be applied.

██ With this background we pass to a consideration of defendant's position. His argument is founded solely upon the unsworn question and answer statement taken from Betty Burries following defendant's conviction. The alleged knowledge of favorable information which was possessed and suppressed by the prosecution must have been gained by the prosecution during the interview the Assistant State's Attorney had with Betty Burries in the presence of her daughter, Mary Burries, in the room at the courthouse prior to the testimony of Mary Burries as a rebuttal witness on the final day of the trial. The colloquy above set forth between the Assistant State's Attorney and Betty Burries is what Betty Burries said she told the Assistant State's Attorney. The prosecuion was not notified of the taking of the statement so the witness was not cross examined by the prosecution nor was anyone present in their behalf at the time this statement was taken. Neither was the witness offered for examination at the hearing on the motion for new trial nor was any excuse offered for her failure to appear in support of her statement. The statement shows that, according to Betty, she went to the Alabama (tavern) to get a beer, and from the time she returned and for the rest of the day the defendant did not come back to the house because she did not see him. Thus the possibility that the defendant did return to the house, as testified by Mary, is not excluded, for the defendant could have returned the second time while Betty was at the Alabama or he could have returned a second time without the knowledge of Betty. Even when Mary was cross examined she continued to say that defendant did return a second time but that he told her that a man had been shot, that she did not remember if he shot the man and, in fact, did not remember anything he said. The statement of Betty does not say how long she remained at the Alabama nor what time she returned. It is thus not shown to be impeaching of nor necessarily contradictory to testimony of Mary. The statement cannot be considered evidence that the defendant did not return to the Betty Burries house a second time on the day of the shooting. It establishes only that Betty Burries herself did not see defendant at her house a second time on that day. This falls short of establishing that the prosecution was in possession or control of information material to the guilt or punishment of defendant and failed

to make disclosure thereof to the defense. Even if the information should be considered favorable, no request for its production was made. Since there was no other evidence or showing bearing upon the matter, defendant was not deprived of his rights to due process in that regard.

The defendant's point is that the trial court committed reversible error by allowing Mary Burries to testify as a rebuttal witness since her name was not upon the list of witnesses requested by the defendant and furnished by the State, and she was not a true rebuttal witness.

■■ We think this point is not well taken since section 114—9 (c) of the Code of Criminal Procedure (Ill. Rev. Stat., ch. 38, sec. 114—9 (c)) expressly provides that the requirements of subsection (a) of section 114—9 (which requires the State to furnish a list of witnesses on motion of the defendant) does not apply to rebuttal witnesses. Furthermore, since the defendant took the stand and testified that he did not shoot the deceased, Mary Burries was properly permitted to state in rebuttal that the defendant admitted to her that he "had shot a man" even though her testimony might also have been used as part of the State's case in chief. *People v. Bell*, 328 Ill. 446, 159 N.E. 807.

Defendant next contends that the trial court committed reversible error by denying his motion for a new trial on the basis of newly discovered evidence. That evidence, defendant asserts, is revealed by question and answer statements of Betty Burries and Mary Sneed. Defendant argues that the statement of Betty Burries shows defendant did not return to her home a second time on the day of the shooting and therefore could not have made the admission to Mary Burries. That contention has been discussed earlier and further consideration of it in connection with the present argument is not warranted. A question and answer statement was also taken from one Mary Sneed following the trial. Its substance is that on the day of the incident in question she was passing by the backdoor of the Patricia Howze home and upon hearing a loud commotion, like a fight, she stepped into the backdoor hallway that leads into the kitchen. While standing there she saw the man who got shot getting up from the floor. James Howze (with whom she was personally acquainted) was standing nearby with both hands down beside his body when the deceased was shot. The shot came from behind James Howze but she could not tell who fired it. She stated that James Howze did not have a gun in his hand. When asked why she did not tell the police what she had seen she said she thought defendant would be found not guilty and that she had heard that some witnesses had been threatened.

■■ Applications for a new trial on the ground of newly discovered evidence are not favored, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice,

such application should be subjected to closest scrutiny, the burden being on the applicant to rebut the presumption that the verdict is correct and to show there has been no lack of diligence, and the exercise of discretion in denying such application will not be disturbed except in case of manifest abuse. (*People v. Holtzman*, 1 Ill.2d 562, 116 N.E.2d 338.) To warrant a new trial for newly discovered evidence, the new evidence must be of such conclusive character that it will probably change the result on retrial, it must be material to the issue, it must have been discovered since the trial, and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. *People v. Baker*, 16 Ill.2d 364, 158 N.E.2d 1.

■■ We do not believe the statement of Mary Sneed is sufficient to comply with the standards required for the granting of a new trial. The most that could be said for it is that it is cumulative and corroborative of other testimony, *i.e.*, that James Howze did not have a gun and that the shot that was fired came from behind him. We accordingly find that there was no abuse of discretion upon the part of the trial court in refusing to grant a new trial upon the basis of newly discovered evidence.

■■ Defendant next argues that the court committed reversible error in permitting the prosecution to use a diagram of the Patricia Howze home and admitting it into evidence. The diagram in question was prepared by the prosecution with the assistance of Patricia Howze. It purported to show the floor plan of the Patricia Howze home and the location of furniture in various rooms. The diagram was admitted into evidence after foundation testimony given by Patricia Howze. Defendant objected to its admission and use upon the grounds that it was not drawn to scale and improperly showed the location of a partition wall in the kitchen that could obscure a view of portions of the kitchen by a person standing in the doorway leading from the living room to the kitchen.

The jury was told that the diagram was not drawn to scale. The defense cross examined Patricia Howze thoroughly with regard to the location of the partition and the extent to which it blocked vision from the living room-kitchen door. Other witnesses who testified were also questioned regarding the location of the partition, where pertinent. Furthermore, there were seven photographs of the interior of the home that were admitted into evidence and examined by the jury. The composite of these photographs presented to the jury a comprehensive view of the interior of the home, including the location of the partition. The attorneys for both the prosecution and defense made extensive use of the diagram in their questioning of witnesses. Occurrence witnesses who were present in the kitchen at the time of the shooting indicated to the jury by use of the diagram their approximate location in the kitchen. Under these

circumstances we are of the opinion that the jury could not have been misled by the diagram and the trial court committed no error in admitting it into evidence and permitting its use. *People v. Frisco,* 4 Ill.App.3d 1034, 283 N.E.2d 277. *Cf. Brown v. Galesburg Pressed Brick and Tile Co.,* 132 Ill. 648, 24 N.E. 522.

■■ Defendant finally contends that he was not proven guilty beyond a reasonable doubt. With this we cannot agree. The jury heard testimony from two eyewitnesses who were present at the shooting and testified that it was done by the defendant. The circumstances leading up to and surrounding this unfortunate incident served to corroborate the eyewitnesses testimony. The verdict is amply supported by the evidence and the guilt of the defendant is established beyond a reasonable doubt. No citation of authority is necessary for the proposition that a court of review will not reverse a jury verdict of guilty unless that verdict is manifestly against the weight of the evidence. We cannot make such finding here and we will not substitute our judgment for that of the jury.

For the foregoing reasons the judgment of the trial court will be affirmed.

Judgment affirmed.

EBERSPACHER, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting:

The State had obtained a statement from Mary Burries who claimed to have been a girl friend of the deceased during the presentation of evidence for the defense. She testified that the defendant had been at her home located at 1414 South 19th Street sometime after noon of March 8, that he left with the intention of going to Patricia's house, that she saw him leave and proceed down 19th Street toward Central, and that he was alone when she lost sight of him near 19th and Lawrence. Sometime thereafter, she testified, the defendant returned to her home and said he was in trouble. He said that he had shot a man and something about "Ninety-nine" (Julius).

Betty Burries, the mother of Mary, gave the State's Attorney's office a statement which contradicted that of her daughter. She stated that after the defendant left her house she went out to get a beer and returned shortly thereafter. She stated further that she remained at home the rest of the afternoon and that to her knowledge, defendant did not return to her house during that time. The State's Attorney's office informed the elder Burries that her testimony would not be needed. However, they

did not disclose her existence, or the nature of her statement to counsel for the defense.

Defendant contends that the State denied defendant due process of law in withholding information from the defense regarding the existence of Betty Burries and the nature of her statements. A review of this contention must begin with *Brady v. Maryland*, 373 U.S. 83, S.Ct. 1194, 10 L.Ed.2d 215. That case held:

> "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

This rule, which has been followed in Illinois, is generally applied where defense counsel requests the production of, but is denied access to, certain favorable evidence in the possession or control of the prosecuting attorney. *People v. Sumner*, 43 Ill.2d 228, 252 N.E.2d 534; *People v. Cagle*, 41 Ill.2d 528, 244 N.E.2d 200; *People v. Moses* 11, Ill.2d 84, 142 N.E.2d 1; *People v. Cole*, 30 Ill.2d 375, 196 N.E.2d 691.

The general rule set forth by the preceding cases applies to situations where the defense counsel did not learn of the favorable evidence of which the prosecutor had knowledge until the end of the trial. (*People v. Murdock*, 39 Ill.2d 553, 236 N.E.2d 442.) In *Murdock* the prosecution failed to disclose the police officers had interviewed a witness whose statement would have cast doubt on the prosecution's theory of the facts. This interview was reduced to a sworn statement, the existence of which was intentionally not revealed to defense counsel. Finding the statement to have been material to the defense, the court reversed the defendant's conviction on the grounds that its suppression was a denial of due process.

In the instant case, the State does not deny that an investigator in its office in fact took a statement of Betty Burries at the time in question, or that such statement was not at least partially a variance with that taken from Mary Burries. Nor does it deny withholding the statement from defense counsel. Rather, it denies that "the evidence of Betty Burries was material to the defense." I cannot agree. Evidence which challenges the credibility of what undoubtedly was the most damaging of all testimony offered against the defendant must be viewed as material. The State's Attorney's belief to the contrary should not determine whether defendant is given the opportunity to present such evidence to the jury. (*Brady v. Maryland, supra; People v. Sumner, supra.*) Defendant should have been allowed a new trial by the trial court when it became evident to it that material evidence favorable to defendant's case was withheld by the prosecutor. *People v. Murdock, supra.*

The majority opinion states: "Even if the information should be considered favorable, no request for its production was made." I am somewhat puzzled as to how the defendant is supposed to request a copy of a statement he knows nothing about.

Here the State deliberately failed to disclose evidence in its possession favorable to the defense obtained during the trial. I believe it is unfortunate that this court now places its stamp of approval on such conduct.